Okay, now we come to our friend Lackey. Yes, Your Honor. Okay, if you want to make your appearances for the record. Yes, Your Honor. Again, good morning, Your Honors. Philip Johnson's four-epilogue. Alan Wayne Lackey. I'd like to reserve four minutes for rebuttal. These four motions which have been consolidated for argument. Why don't we take mootness up on all four of them? Pardon? Mootness. Yes, that's just what I was going to ask. I was going to say that I filed a motion on each one just over a month ago. Yeah. And counsel has no idea where we are on those motions. Well, if you think the case is moot, then why don't you dismiss it? Why don't I dismiss it? Yeah. If I were to dismiss the appeal brought by Mr. Lackey in each case, that would say that the FAA is correct and that the orders of suspension should be enforced. And if it's moot, what would happen? If it's moot, the mootness argument is simply that the FAA has revoked his commercial pilot's license, so there is no commercial license to be suspended. But did the FAA revoke his personal flying privileges? His private pilots? No. As a matter of fact, there's a specific order on that. So there's only one certificate, right? One paper certificate, yes. Right. And on that certificate, there's the various ratings at which he can fly. Correct. He has like four of them that are the private flying, and then he has one that's commercial. Yes. The one that's commercial has been revoked. Yes. But the other four are still there. Yes. So if we said this case was moot, what would happen to the suspension on the private flying? Well, that's the issue that the FAA is, that the government is concerned about. It's our position that the orders of suspension went only to the commercial pilot privileges. Well, you think the suspension only related to commercial? It didn't relate to the private? Let's see. Where is that document? Okay. So that's a question on my mind. If you lose the commercial license, do you lose the private license? Well, let me answer that in two parts. The administrative law judge who held the hearing on the revocation said that the revocation went only to the commercial privileges and that he was keeping the private pilot privileges intact. Did it say commercial privileges or did it say commercial pilot certificate, which contains both? Because the certificate, I guess you have to look at each order and see what exactly was suspended. Let me read to you from that order. As a matter of fact, does the court have in front of it the motions that were filed and the responding papers? The first attachment to the motion of Petitioner Alan Wayne Lackey for an order finding matter moot and to dismiss is the last page from the order of Judge Mellon's dated June 1, 2009. And the last paragraph says order. And so, therefore, I find that the administrator's order should be affirmed but only as to Mr. Lackey's commercial helicopter license. The separate order that safety in air commerce and safety in air transportation requires an affirmation of the administrator's order of revocation as issued as to only that certificate which was reexamined. And that is the commercial aircraft rating of this respondent. And as to that rating, the order of revocation will be sustained. So I hope he was clear. Well, I hope so, too, but I still have a little problem understanding this mootness issue. If you think it's moot as to everything, then you can dismiss it if it's moot. No, because the FAA has taken the position, which I think is erroneous, that the only way the suspicions could be overturned is if Mr. Lackey prevails on all three matters that are now on appeal. I think that's erroneous. I think that's within the court's preview to say, as any other court would say, the charges are dismissed, they're stricken, that's it. Well, wait a second. Okay, so now I'm looking at case number 08-72357. Yes. Okay. So in that one, the license was of the respondent's, I mean, the suspension was of the respondent's commercial pilot certificate. Right. Well, he doesn't specify which privileges. He just says the certificate. And the certificate, when you look at that, has several types of privileges. So I guess it's moot if that was only to commercial privileges, but it's not what it says. It does not say all airmen privileges. It says commercial certificate, correct? Well, what is the certificate? Well, I think I indicated in my motion that as a pilot progresses through the various phases from private pilot to commercial pilot to airline transport pilot rating, that each certificate is subsumed or included in the next hire so that a person who has been a private pilot still has those private pilot privileges, even though he has a commercial certificate. What if the certificate, number 73188, the suspension was of the certificate as well? Either the whole certificate is revoked, in which case he doesn't have anything that allows him to fly, or only the commercial part of that certificate, which contains several sets of privileges, as you've explained. You go from private to commercial to whatever you are next. And either they revoked everything, which I don't think you would like, or they only revoked the commercial part, and then the private part is still in effect, and then there are separate orders of suspension on those. Well, again, let me break that down, if I might, Judge Reinhart. Judge Mullen's order, I think, was pretty clear. He made it quite – he went through some effort to let the parties know that because the FAA had presented evidence only with respect to the testing of Mr. Lackey for a commercial pilot certificate, that he was only revoking that commercial pilot certificate and keeping the private pilot privileges intact. As a matter of fact – oh, that's outside the record, never mind. I was about to talk about a matter that's going to be heard on the 20th or 21st with respect to the certificate. But there is – I think that one of the things that the Court should be aware of, the order of clarification asked for any cases, statutes, regulations that the FAA could think of, that the government could think of, that said when you revoke a commercial pilot certificate, that includes private pilot certificates. When you suspend a commercial pilot certificate, that suspends private pilot certificates. They did not come up with any cases, statutes, or regulations. In my motion, as a matter of fact, I said that the argument that was being made doesn't stand for the FAA's current position because there are no cases, regulations, or statutes that make that argument. Well, when the order of revocation was issued, the status was that there were – that the orders of suspension with respect to the private privileges had been issued. That the private privileges were still intact. That Mr. Lackey could exercise those privileges. But there were no suspension orders as of that time? The suspension orders at that time were the court matters that were in here on this morning. Yes, but they had been issued before the revocation? Yes, yes. And did – in the revocation hearing, was there any consideration of the suspension orders? No. So nobody said to him the suspension orders should stay in effect, they should be vacated, neither argument was made? There was no discussion of that. So he didn't consider the suspension orders. He simply considered the violation of the commercial privilege. I cannot say whether or not Judge Mullins considered those. I believe that he was aware of them, yes. Why don't we ask the counsel for the FAA? Hi. Hi. Good morning. My name is Laura Jennings, and I represent the FAA. I missed the four pieces before you. See if you can keep your voice up a little. Sure. Now, if Mr. Lackey surrenders his certificate to the FAA, will it be reissued with personal pilot privileges included? In terms of the four suspension cases? In terms of the revocation. In the revocation, yes. In the revocation, yes. Because, again, as was just noted. Then, you know, my other question is, would the certificate indicate whether the personal pilot privileges had been suspended? Dealing with the revocation case, he – the way it should work is that he is required to surrender his certificate, and because he still has those private pilot privileges, he would reissue it. Will it be reissued with personal pilot privileges included? No, because of the four separate suspension cases before you. And those orders, he was required – he's – the orders affected the certificate in its entirety. So he's required to surrender his certificate to the FAA, his actual physical – Yeah, but I'm saying he does that. Right. He does that, and we do not – When he gets – when he gets a – when he – will he get a certificate back? No. That shows that he still has his private – Privileges. Privileges. No, because of the suspension cases. But suppose that after he – Sure. After he serves his suspended time. Yes. After that period of time. Yes. Does he get back the certificate with those privileges? Yes, that's correct. After he fulfills the suspensions – the suspension periods imposed and the four cases before you, then his certificate would be returned. And the revocation is for a year. So when – Suspension is close to a year. It's, in fact, over a year. Are these cumulative suspensions? Yes, correct. Do you know how much they add up to? It's over a year. It's actually 390 days. So during that year, he can't – He can't do anything. He can't do anything. He doesn't – he can't fly a helicopter just with himself in it. No. Correct. Because of the suspension cases. Oh, I see. So he's grounded totally for a year. Correct. And it seems to be, in a way – I mean, the motion that's before you is almost – is a way that he's trying to circumvent the suspensions imposed by the FAA. Well, is that true with all of them? Let's say your instructor privilege is – your instructor certificate is suspended for a period of time. That means you can't do anything in the commercial area or the private area. If it's suspended? Yeah. Yeah, correct. So if it's suspended as an ATP or an instructor or any one – commercial, private – in any event, suspended, you're wiped out totally for that period.  Because it's punitive. You mean if your instructor license privilege is suspended, everything's suspended? Or you just suspend that particular part of the privilege? It depends on the orders, the FAA's orders of suspension and what they're seeking to suspend. But if they say, as in this case, Mr. Lackey's commercial pilot certificate, that included – that meant the certificate in its whole. I mean, if you get – it kind of goes case by case. But the common – in cases where it's a certificate action case and it's a suspension case, those cases are meant to be punitive in nature so that in general – Well, okay. Let me put it more simply. Suppose you had no suspension orders now. Yeah. And you had just revoked the commercial privileges, which I understand the commercial – the revocation case did. Yeah. Are you saying that the revocation case in itself, that order, would wipe out everything, not just the commercial privileges? No. All right. So if it weren't for the suspension orders, he would now be allowed to fly non-commercially. Yes. Okay. Sure. So – No, I don't understand it. I mean, you just answered one way to me and another way to – Well, she likes me better. I'm sorry. Then maybe – You like me better. Okay. If you could just state your question again. Maybe I just didn't understand. But – Okay. I've got his certificate right here. All right? Yeah. And it says, certificate – wait a second here. This is his certificate. Here it is right here. Okay. And it says, certificate details. And lackey certificate. Certificate 261867983. And it shows that he's got a commercial pilot rotorcraft helicopter, private pilot, multi-engine land. He's got private pilot airplane, multi-engine sea. And then he's got airplane single-engine land. And airplane single-engine sea. Now – And the commercial pilot is the rotorcraft helicopter. So if you suspend that, all the rest is suspended. Well, I think you're a little bit confused in that – A little bit? I'm confused, maybe. Okay. Let me ask you this question. If his commercial pilot privileges are suspended, does that mean that all the private pilot privileges are also suspended? No. And that's, in fact, what happened in the revocation case, the subsequent revocation action. So he can go out and he can fly all these other planes. Yes, according – Multi-engine land, multi-engine sea. Well, can he fly a helicopter for his own, you know, just for – Say he owns a helicopter and he wants to fly it. Can he fly that? I believe that the rotorcraft rating there, my understanding from speaking with someone at the FAA, it does attach to his private pilot privileges. So technically, yeah, he cannot operate a helicopter as a commercial pilot. Not – yeah. But that – so – Can he operate it as a private pilot? Yeah, that is my understanding. He can. Can. Except for the suspension. Except for the suspension. Yes, correct. But that – so that's the isolated instance. That's what the administrative law judge confined his decision to and the revocation action. But compare that to the four suspension cases before you where the board said, we affirm the administrative law judge's order below affirming the suspension imposed on Mr. Lackey's commercial pilot certificate for X amount of days. And if you look, then the board attaches a footnote in each of its decisions. It says, according to – it's a regulation. Mr. Lackey is now required to surrender his certificate to the FAA, meaning – So the revocation case is really Moose. That's the one that's Moose. If you win the suspension cases, the revocation's over by the time – The suspension's over. The suspension's over. Right, right. And Moose, as to the sanction addressed, you know, it's not Moose. The underlying merits of these cases aren't Moose anymore. Right. But there's no practical operation to the revocation, as I understand it, if he's eligible again in a year.  That's correct. Yeah. If we affirm on the for suspension of the certificates, then the revocation, you could move to have that one dismissed as Moose, if he's appealing it. The revocation, yeah, which he has not. He hasn't appealed that? No. It is confusing. I understand. Well, it's the language that's used that's confusing, because the certificate is called a commercial certificate, but then it embraces the private and commercial privileges. And so maybe they should clean up their language or something. Let me ask you this. He's suspended for over a year. Right. Which means he can't fly at all for over a year. Do you think there's any chance you could all agree on a solution to this, which might even possibly be a lesser period when he'd get his licenses back, or any hope of some kind of settlement of this dispute? At this point, I don't think so. I mean, there have been so many actions involving Mr. Lackey. The other thing that's at issue is a suspension case is different from a revocation case. So under a suspension case, the airman is required to physically surrender his certificate to the FAA. Once he fulfills the suspension period, the certificate is returned to him, and that's over. Under a revocation case, Mr. Lackey, once he fulfills the year of revocation, he'll have to go through reexaminations and tests to show that he's qualified again to hold his commercial pilot, the privileges that were revoked. So it's not quite as simple. There's extra layers in the revocation case that aren't present. So it's really not moving because he has to have the testing. Yeah. And that's why, if you look at this decision, the revocation decision, the judge limited the revocation to the commercial because he had failed the commercial tests. Exactly. Yes. That he hadn't the – whether or not he had taken the private testing wasn't before this judge. Correct. Right. So none of that really interferes with a peaceful resolution of a dispute. You know, the question of whether he should be reexamined or not is an issue that could be resolved either way. The question of how long his commercial privileges should be suspended is an issue that could be considered. The question of whether how long his private privileges should be suspended is another issue. And all those issues are up for bargaining if the parties are interested in a resolution. Now, is there any possibility that if we have a very efficient mediation department in the court, is there any possibility both sides would be interested in exploring that route? You know, we certainly would not rule it out. At the initiation of all these cases, the FAA has an informal conference where the parties sit down and see if they can work it out. My understanding is that in each of these cases, Mr. Lackey was solely interested in challenging the underlying orders of the FAA. And I think it's fair to say each of these cases has been fairly contentious, and the FAA took the violations in each of these cases were fairly egregious. So, you know, I think that the FAA may have— On the other side of it, a lot of this, I'm almost—I think four or five are tainted by the presence and the litigation dispute with Mrs. Bamford. And so there's sort of a sympathetic kind of reaction to his plight because probably—Ferguson's a perfect example. If Bamford hadn't been there that day trying to catch Lackey on video or whatever she was doing so that she could get ownership of the helicopter, then none of this—the Ferguson case wouldn't even be here. And then I think that's true with three of the four other cases, and it may be true of all of them. So it seems—I mean, there's a taint. Not that, you know, would we—I don't know. I mean, obviously the standard of review is quite high here. But on the other hand, it doesn't feel quite right because you have this person with a vendetta turning in and taking pictures, and maybe none of this would even be here, but for that. Sure. But, you know, the administrative law judge noted in his decisions that he was aware that Mrs. Bamford was not this disinterested party. Yet, according to his decisions, he seemed—stated, asserted that he was giving this all an impartial view. And I think there's also an argument to be made, although Mrs. Bamford sounds like she did have a personal vendetta against him, that Mr. Lackey was flying in contravention of the federal aviation regulations. It's true. And how many stop signs have you rolled through and there wasn't a cop there? And how many times have you hit the yellow light a little late? You know, I mean, it is kind of a—I mean, I certainly understand your position. I mean, he did violate this, but on the other hand, to have suspension for over a year of everything— I mean, I'm not advocating that he should be flying commercial without having passed his commercial testing, believe me. But, you know, the harshness of the sentence or the suspension, given that they are punitive in nature and given how it all arose— The only real question is if there are, you know, equities that could be considered. And as you said, you would not be opposed to trying the mediation process. What about you, Mr. Johnson? If I might, Your Honor, from the start I've taken the position that perhaps we could come to some arrangements. As a matter of fact, I was at the FAA's office in Gardena on July 1st talking about some other matters, and this came up and the FAA's position was thanks but no thanks. So I'm prepared to speak with them and attempt to iron something out. This is Mr. Lackey's livelihood, needless to say. But he needs to take that commercial test and pass it. For him to fly commercially. For his livelihood. Yes, but he can still operate wine country helicopters with other pilots flying for him. But he would need to use his private license in order to fly into maintenance facilities, fly in to talk to people, that type of thing. So I assume that what he would like is to get everything back, but that there are solutions in between which might give him part of what he wants and might allow the FAA to feel they've gotten enough discipline to make their point with Mr. Lackey. So there are various approaches to this. And so you say you're willing to explore it. I think maybe our mediation service frequently helps people arrive at solutions they don't think they would otherwise arrive at and to take some of the emotion out of the cases from either side. The very first matter that was filed, and I think it's 2357 if I'm not mistaken, we did appear with a telephonic conference with the mediation office in San Francisco. The FAA again took a hard line position. I informed the mediator that several other matters were coming up. And he said, well, I'll take a look at those and perhaps we'll get together. We never got together again. I thought all four matters would be discussed at one time, but they were not. Well, let me ask you this. What do you think would be an equitable solution here? That's why I filed the motion to find the matters moved, because I think that they've revoked his commercial pilot's license. He cannot personally fly for compensation or hire other people who need to do that for him. So there's no sense in suspending his licenses. There's absolutely no sense. It's an overkill. The suspension extends to the private. They don't want him flying in private because, I mean, accidentally flying into presidential airspace is probably not a good thing, right? So they don't want him necessarily doing that either. So maybe something in between. Well, I don't think we're going to be able to settle into that. Let me ask you this. I mean, what if he were allowed the suspension, or he were allowed to continue with his private pilot privileges, and you want him to be able to fly a helicopter if he's got to take it for maintenance? Maintenance to fly to meetings, that type of thing. Those are strictly private activities, yes. Well, he could fly to meetings in a single-engine or multi-engine plane. I don't think he has one of those. Huh? I don't think he has any fifth-wing aircraft. But he knows how to fly them. Yes. He would be required to rent them, as a matter of fact. He'd rent them. It's not that expensive, is it? Yes, Your Honor, it is. It would have gone up appreciably. Single-engine Cessna? Yes. Is it expensive? Yes. Of course, this is all relative, right? Perhaps not for the Court, but for someone like Mr. Lackey, yes. You haven't been reading the stories about our salary. I said, I haven't been reading about our salary. He said it was relative, like it might not be expensive for you, but it is for him. Oh, okay. Well, he's a hitchhiker. But we are interested in trying to come to some resolution of this, Your Honor, quite honestly, yes. What would your suggestion be? I think the best possible solution. He did not fight the revocation because he said, first of all, he didn't tell me about the first failure. I would have told him, go to school, get some flight time with an instructor. He didn't do that. He didn't even prepare for the second one. So, you know, he was busy. So he said he was not even going to contest or appeal the revocation. So the revocation is in effect. Is in effect, yes. So the best possible solution is to continue the revocation in effect and just to overturn the suspicions. Do what? Overturn. Well, I don't think the FAA is likely to consider that. That would have been easy for them to do. That's a starting negotiation. That's the basis for negotiation. That's not the negotiating end. And why don't we just. But see, what's the sense in having the suspicions continue long past the revocation? Well, we don't have to continue long past the revocation. That's what you're. If you go to mediation, maybe you'll arrive at something in between. OK. How long? How long is the suspension in effect? The suspicions are not in effect. Because of this. I doubt it very much. I doubt it very much. He can fly. He can. But I doubt it very much. Because nothing goes into effect till we decide the case. That's correct.  He cannot fly a helicopter commercially because of the revocation. Because that's the revocation. That's the revocation. OK. So the FAA may want to get this over with and agree on something with respect to the suspicions. And then he'll have to take the commercial pilot examination and the process and the training over again. He has to reapply for that license, yes. He has to reapply. Yes. So let me ask the FAA, should that be enough? We've got 360 days for both revocation and the suspension. Is that what you mean, so they coincide? How long has he not been flying? Well, like Mr. Johnson just represented, the suspensions have been stayed. But he's not flying. Well, he's not flying commercially with his commercial privileges. He is still flying. He's flying helicopters still? That's my understanding, yes, based with the private pilot privileges. But we're urging the court to affirm the board's orders below, which the suspension orders, which apply to his certificate in its entirety. So that he cannot fly, exercise any privilege on his certificate based on the orders of suspension. All right. So and the total suspension is about a year? It's 390 days, so 30 days more than a year. Which won't start until after the decisions. Meanwhile, the revocation's in effect. Yeah, that's already started. So the longer this goes on, you're going to end up doubling the time he would have had otherwise. Right. But to that end, Mr. Johnson or Mr. Lackey specifically requested the board's order to be stayed. I mean, he could have started serving that, whatever it is now, like 90 days ago. But it's all been, the effectiveness has been stayed. So are you enjoying the mediation service? They're very nice people. If I could interject just one thing. The order of revocation was effective June 1st. Yeah. So his total time of being affected by this keeps increasing. Effective June the 1st, this year? Yes. Thank you. I would submit that I think the suspensions in each of these cases, if you look at the, the suspension chosen is on the lower ranges. And for the egregiousness of the four cases, I mean, he flew into a restricted airspace when former President Bush was in the area. He took off when the cloud ceiling was below conditions to fly visually. He took off without a clearance. He was flying with his commercial privileges when he hadn't renewed his, the recurrent tests for each year. Each year you have to take an annual, like, competency test. And he flew when he was under the limitations of a special flight permit and when it directly did things in opposition of what was termed the special flight permit. So although combined it's over a year, for each of these separate cases the suspension saw, in most of the cases was reduced by the administrative law judge, in each case by 20 or 30 days. I think that they're very fair. One went from 90 to 85. Right. Well, that was. But anyway, you're getting a year's suspension of the commercial privileges in any event. So no matter what happens with the suspension cases, you're getting at least a year's suspension of the commercial privileges, plus he's got to take the test and take the training. So. Those are the critical things. True. But again, if you. It's a different case than if you just have the suspensions. You know, you may look at it in a different light when, you know, when you started, nothing was happening to him. Now he's in the process of a year's loss of his commercial privileges. So I wouldn't waste much time convincing us of how you ought to be punished. You may be able to work something out with the mediation people. He does have an argument on the impairment of his cross-examination privilege. That's Ferguson. That's in the Ferguson. Yeah, that's. Okay. Well, thank you. Nice seeing you. You too. Thank you. If I might just inquire, the court has talked exclusively about possible mediation. Does the court suggest that we contact San Francisco and. Mediation of the order. Pardon? Mediation of the order. But let me just suggest that you might want to. I mean, I'm not against mediation. I think anything that can be resolved is great, but it will add more time. Yes. So, I mean, I assume that's why you didn't appeal the revocation. Correct. You might add to the time. Well, we'll tell the mediators it's urgent. Immediate. Why don't, look, while you're here now, why don't you go and we'll give you a nice room and you can sit there and get your coffee. You don't have any tea here, do you? I can't drink coffee. We'll give you what kind you want. Anything. I want green tea, chamomile. Whatever. Rosebud tea. Let's not get too fancy, Your Honor. No, we've got it all. We're here from Washington. Do you have a plane to catch? Yeah. I know their telephone number, though. You better get out of here soon. We'll give you cookies. Well, I'll find a room for you. How much time do you have? Um, her flight is at 4, which means she needs to be in LAX no later than 2-30, and it's 12-30. No later than what? 2-30, an hour and a half before the flight. Oh, geez. Where are they from? Washington, D.C. Washington, D.C. Well, why don't they take you home with them? Well, then how are you going to get together on this? I say I know their telephone number. Fair enough. We've participated in the night circus aviation program many times, and we're more than happy to do that. We do it to a lot of claim, and it works real well. I think Judge Patterson wants to get you in a room and settle it himself. Yes. What did you say? I think you want to do it yourself, like now. Yeah, I'd do it now, right now. Just off the record, my mentor, Wayne V. Tucker, had a lot of confidence in your mediating ability. Yeah, he's good. Remember him? Oh, Tucker? Yeah. Oh, yeah. What's he doing? He died roughly 10 years ago. Oh, yeah, I had some aviation cases. Did they involve the Navy? Many different things, many different things. We had autopilot crashes in the 73-45. We had Navy catapult shots off the helicopter. Oh, yeah, the catapult shots, yeah. Yeah, the resting gear hook, you know, would break. We did it. Yeah, you were on that, huh? Absolutely. Yeah, well, he was paralyzed from the waist down, wasn't he? Tucker? There was one guy that was. Oh, one of the plaintiffs. No, no, not the plaintiffs. Oh, one of the lawyers. One of the lawyers, yeah. He was a pilot that. He was major. Yeah, on. You're taking me back too far. Yeah, when he was. Yeah, no, I remember those, where these aircraft companies, the Navy would survey those hooks. Then they'd paint them over, and they'd sell them back to the government. And guys were getting killed, you know. Yeah, that was. That was a long time ago. I had only two major air crashes at LAX. The United Flight and SAS. And, yeah, well, I like this mediator. If you want me to. We have our emergency orders, Your Honor. What'd you say? We have our emergency orders. All right. Okay, thank you. Just stay on the ground. Don't fly. Thank you. All right, thank you. All rise. This Court of Discussions has adjourned. I thought your name was familiar. Pleasantly so.
judges: Pregerson, Reinhardt, Wardlaw